(22 App. Div. 516.)

### PEOPLE v. FLANAGAN.

(Supreme Court, Appellate Division, Second Department. November 30, 1897.)

1. ROBBERY—EVIDENCE.

Upon the trial of an indictment for a robbery charged to have been committed in a bank, there was evidence that just before the robbery a man resembling the defendant entered the bank, and asked to have a bill changed, and was not seen to go away; that almost immediately one C. entered, and engaged the cashier in conversation, and shortly departed; and that then the cashier turned, and saw a man with his hand full of bank bills before his face, who escaped. It also appeared that, among more than 4,000 photographs examined, the cashier selected, as resembling this man, a photograph of defendant; and there was testimony that defendant and C. had been seen talking together in a saloon about a week before the robbery. *Held*, that the conviction of defendant was supported by the evidence.

2. CRIMINAL LAW—REMARKS OF PROSECUTING ATTORNEY.

A statement by the district attorney, in his opening to the jury, on the trial of an indictment, that defendant and an alleged accomplice, prior to the commission of the crime, "acted in a suspicious manner," was not open

48 N.Y.S.—16

to objection, where it was merely his construction of competent evidence which he proposed to, and did, introduce.

Appeal from Westchester county court.

Patrick Flanagan was convicted of robbery in the first degree. From the judgment, and an order denying a new trial, he appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, HATCH, and BRADLEY, JJ.

John F. Brennan, for appellant.
George C. Andrews, Dist. Atty., for the People.

BRADLEY, J. On April 12, 1897, about midday, the Yonkers Savings Bank was subjected to a robbery of $4,420. The defendant was, by the indictment, charged with the commission of the crime. The main question on the trial related to his identity as the person who did it. The circumstances preceding and attending it were that some minutes before 12 o'clock a person came into the bank, presented a one-dollar bill, and requested change for it. The cashier (Mr. Cobb) did not change his bill, and the person stepped away from the paying teller's window; and the cashier supposed he went out of the bank, but whether he did or not does not clearly appear. At the time the request was made for the change, Mrs. Stewart, a customer of the bank, was in conversation with the cashier, and she, shortly after, left the bank. Her evidence is that the defendant is the person who asked to have the bill changed, and that he did not go out of the bank ahead of her. Immediately after Mrs. Stewart left, another person (whose name, as it turns out, was Conners) came into the bank, engaged the attention of the cashier, and had a conversation with him, in which he said that he had an appointment with a friend, to meet him at the bank at 12 o'clock, and, as he was not then there, he would wait until he came in. After a while he said he would wait no longer, and asked the cashier to tell his friend that Mr. Williams had been there to see him, and would return again at 2 o'clock. This so-called Williams then went out, and as the cashier turned around, and was proceeding forward, he saw a man standing in front of him, having his left hand, full of bank bills, up to his face, so as to substantially conceal it from view; and in his right hand he held a revolver, which he pointed at the cashier, and said to him to neither move nor speak, or he would be shot. The man moved backwards through the door in the counter, and then passed out of the door of the bank into the street. So far as appears, no person came into the bank, from the time the cashier was asked to change the dollar bill until the robbery occurred, other than Conners and the person who committed it. The circumstances proved warranted the conclusion that the person who asked for the change was the one who got behind the counter and took the money from the till of the bank, and that Conners, who was his accomplice, gave him the opportunity to do it, by engaging the attention of the cashier. The cashier was unable to identify the person who presented the dollar bill for change;

and when he had the stolen money in his hand the view of his face by the cashier was interrupted, partially, at least, by the bills in his hand held in front of it. The cashier, however, examined several thousand photographs at police headquarters in the city of New York, without finding any that made any impression of similarity, within his recollection of this person. He then went to the Pinkerton agency, where he saw the only picture that impressed him at all as that of the person who took the money, and it turned out to be the picture of the defendant. After his arrest he was identified by Mrs. Stewart as the person who presented the dollar bill and asked for change. There was evidence introduced on the part of the defendant tending to prove that there was some confusion in her evidence bearing upon the question of the defendant's identity at his preliminary examination in the city court of Yonkers. But the evidence of Mrs. Stewart and that of some other witnesses on the part of the prosecution tended to dispel such apparent confusion, and was such as to permit the jury to conclude that Mrs. Stewart had such an intelligent and well-sustained recollection of the person as to enable her to identify the defendant as the one who sought the change in her presence; and, although the jury were not required to do so, they were, by her evidence, warranted in finding that he was such person. The only evidence that the defendant and Conners were at any time seen together was that of Mr. Schlobohn, who kept a saloon about 30 feet from the police headquarters in the city of Yonkers. His evidence was that about a week before the robbery the defendant and Conners came into his saloon about half past 10 in the morning, and remained there until 1 o'clock, when he left for dinner; that they talked between themselves, looked out of the windows, looked at newspapers on the table, and, so far as appeared, had no apparent business with anybody else. The exception to the reception of this evidence was not well taken by the defendant's counsel. Evidence had been given tending to identify both of them as the persons who had participated in the transaction of the robbery, although they were not seen together on the day or occasion when it was committed. It was competent to show that they were associates a short time before the occasion in question, although they were not then apparently engaged in any unlawful enterprise. It does not appear that they were seen together on the day of the robbery, and, while the fact that they were in the saloon was of itself of no special importance, it did tend to deny to the defendant the claim that he and Conners were strangers, and the consequent contention that they could not have been in complicity in the alleged robbery.

In his opening statement of the case to the jury, the district attorney, in referring to the facts which the prosecution expected to prove, stated that "they went into the saloon of Alderman Schlobohn, and acted in a very suspicious manner"; also, that "they looked out of the window of the saloon, which was noticed by others as well as Schlobohn, and acted in a very suspicious manner." Exception was taken by the defendant's counsel to the overruling of his objections to those statements. In view of the fact that the

evidence of their presence in the saloon was admissible, there was no prejudicial error in the statement so made by the district attorney. It was his construction of the evidence in that respect which he proposed to introduce. Whether his view of it was fully borne out by the evidence, was for the consideration of the jury.

The witness Cobb had testified on the subject of the photographs as above mentioned, and, further, that he had recognized the picture of Conners, without objection, and had been cross-examined on the subject. On his redirect examination he was asked whether he selected from the group of photographs one which, in his opinion, resembled one of the men who was at the bank. On answering in the affirmative, he was asked if he could then identify it as of either of those men, which he also answered in the affirmative,—the number of which the witness also stated. Exception was taken by the defendant's counsel to the reception of this evidence. Although the picture was marked for identification, it does not appear to have been offered in evidence, nor does it appear which one of the men the witness thought the photograph referred to resembled. While there may be some doubt about the admissibility of the evidence, it added nothing to what the witness had before testified without objection, as the picture was not put in evidence. The exception therefore requires no consideration.

None of the exceptions to rulings on the trial, or to the charge or refusals to charge, were well taken. The case was fairly submitted to the jury by the charge of the court, and the verdict was supported by the evidence. The judgment and order should be affirmed. All concur.